# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAT-VAN, INC.; LUMAN N. NEVELS, JR.; 1DB CORPORATE RETREAT, LTD., <br><br> Plaintiffs, <br><br> vs. <br><br><br> SHELDON GOOD & COMPANY AUCTIONS, LLC; SHELDON GOOD & COMPANY AUCTIONS; and DOES 1 to 30, <br><br> Defendants. | CASE NO. 07-CV-912 – IEG (BLM) <br><br> **ORDER: 1) GRANTING DEFENDANTS' MOTION TO DISMISS; 2) DENYING DEFENDANT'S MOTION TO STRIKE REQUEST FOR PUNITIVE DAMAGES; and 3) GRANTING PLAINTIFFS LEAVE TO FILE AN AMENDED COMPLAINT** <br><br> **[Doc. No. 9]** |

Presently before the court is a motion to dismiss plaintiffs' first cause of action and a motion to strike plaintiffs' claim for punitive damages filed by Sheldon Good & Company Auctions, LLC and Sheldon Good & Company Auctions (collectively "defendants"). (Doc. No. 9.) For the following reasons, the court grants defendants' motion to dismiss, denies defendants' motion to strike, and grants plaintiffs leave to file an amended complaint.

## BACKGROUND

**Factual Background**

Defendants are auction companies that are incorporated in Delaware and have their principal place of business in Illinois. Mat-Van, Inc. ("Mat-Van"), Luman N. Nevels Jr. ("Nevels"), and 1DB Corporate Retreat, Ltd. ("1DB"), (collectively "plaintiffs") each own island properties, which they

1  wished to sell.  This action arises out of contracts between defendants and each plaintiff where
2  defendants agreed to auction plaintiffs' three resort islands.  (Memorandum In Support of Motion
3  ("Memo. ISO Motion") at 2.)

4  According to the complaint, defendants approached plaintiffs with a plan to set up a worldwide
5  auction where plaintiffs could sell their three islands along with two to four other sellers.  (Complaint
6  ("Compl.") at 4.)  Plaintiffs allege that defendants represented there would be a minimum of five
7  properties for sale at the auction and each owner would contribute $100,000 per island, for a total of
8  $500,000.  (Id.)   Furthermore, defendants represented to plaintiffs that the auction would be a
9  worldwide event for upscale buyers that would be held at a four star hotel in New York City.  (Id.)
10 Defendants further assured plaintiffs the auction would be appropriately marketed as a "world class"
11 event.  Pursuant to contracts that reflected these terms, plaintiffs each gave defendants $100,000 for
12 marketing and auction purposes.

13 The auction did not turn out to be the success plaintiffs hoped for as none of the island
14 properties were purchased.  According to plaintiffs, the event was conducted at less than a four-star
15 hotel and the auction was poorly attended. (Opposition ("Opp.") at 2.)  Plaintiffs also discovered that
16 contrary to defendant's alleged representation and the contract terms the other sellers did not
17 contribute $100,000 to the marketing funds, but only contributed $50,000. (Compl. at 4, 6.)  Thus,
18 there was only $400,000 in total available advertising assets and not the $500,000 assured by
19 defendants.  Defendants have not provided an accounting of the funds expended on promotion of the
20 auction despite repeated requests by plaintiffs.  (Id.)  Plaintiffs allege defendants misrepresented: 1)
21 the contribution requirements for the sellers at the auction; 2) the total amount of money to be spent
22 on marketing; 3) and defendants' own expertise in conduction property auctions.  (Id.)

23 **Procedural Background**

24 On April 5, 2007, plaintiffs filed a two-count complaint in the Superior Court of California for
25 the County of San Diego alleging defendants: 1) committed fraud; and 2) breached the terms of their
26 contracts.  (Doc. No. 1, Notice of Removal, Exhibit A, p. 3-4.)  Plaintiffs effected service by mail on
27 April 21, 2007.  (Id. ¶ 2.)

28 On May 21, 2007, defendants timely filed a notice of removal to the United States District

1 Court for the Southern District of California. On June 1, 2007, defendants filed an ex parte application
2 for an extension of time to file a responsive pleading, which was originally due on May 29, 2007.
3 (Doc. No. 6.)  Plaintiffs filed an opposition, (Doc. No. 7), and the court denied defendants' ex parte
4 application on June 13, 2007.  (Doc. No. 8.)

5 On June 19, 2007, defendants filed the instant motions.  (Doc. No. 10.)  Plaintiffs filed an
6 opposition on July 9, 2007, (Doc. No. 11), and defendants filed a reply on July 13, 2007.  (Doc. No.
7 12.)  Plaintiffs filed a sur-reply on July 19, 2007.  (Doc. No. 13.)  The court finds that the matter is
8 now fully briefed and amenable for disposition without oral argument pursuant to Local Rule 71.1(b).

**DISCUSSION**

**1.     Defendant's Motion to Dismiss Count 1**

Legal Standard

A motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. Proc. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001). To survive a Rule 12(b)(6) motion, a complaint generally must satisfy only the minimal notice pleading requirements of Fed. R. Civ. Pro. 8(a)(2); Porter v. Jones, 319 F.3d 483, 494 (9th Cir. 2003).  A court may dismiss a complaint for failure to state a claim when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Navarro, 250 F.3d at 732 (citing Conley).  In other words, a Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988).

In deciding a motion to dismiss for failure to state a claim, the court's review is generally limited to the contents of the complaint.  Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996); Allarcom Pay Television, Ltd. v. General Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). The court must accept all factual allegations pled in the complaint as true, and must construe them and

1 draw all reasonable inferences from them in favor of the nonmoving party.[1] <u>Cahill v. Liberty Mutual Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir.1996); <u>Mier v. Owens</u>, 57 F.3d 747, 750 (9th Cir.1995) (citing <u>Usher v. City of Los Angeles</u>, 828 F.2d 556, 561 (9th Cir.1987). In spite of the deference the court is bound to pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged." <u>Associated General Contractors of California, Inc. v. California State Council of Carpenters</u>, 459 U.S. 519, 526, (1983). Furthermore, a court is not required to credit conclusory legal allegations cast in the form of factual allegations, "unwarranted deductions of fact, or unreasonable inferences." <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001); <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981), cert. denied, 454 U.S. 1031 (1981).

A court may dismiss a complaint without granting leave to amend only if it appears with certainty that the plaintiff cannot state a claim and any amendment would be futile. <u>See</u> Fed. R. Civ. P. 15(a) (stating that leave to amend "shall be freely given when justice so requires"); <u>DeSoto v. Yellow Freight Systems, Inc.</u>, 957 F.2d 655, 658 (9th Cir. 1992); <u>Schreiber Distrib. Co. v. Serv-Well Furniture Co.</u>, 806 F.2d 1393, 1401 (9th Cir. 1986) (stating "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency").

<u>Analysis</u>

There are two preliminary issues for the court to address. First, plaintiffs argue in their opposition that the court should deny defendants' motions because they were not timely filed pursuant to Local Civil Rule 16.5(l)(3). (Opp. at 4-5.) Plaintiffs also rely on the fact that the court previously denied defendants' ex parte application for an extension of time. Plaintiffs' arguments are not persuasive. Local Rule 16.5(l)(3) does not stand for the proposition that after the time to file an answer, a motion to dismiss can only be filed upon an order of the court. Local Rule 16.5(l)(3) merely affirms the general rule that a unilateral request or a bilateral agreement for an extension of time must be approved by the court because the court is the final authority over its docket.

---

[1] Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. <u>Wheeldin v. Wheeler</u>, 373 U.S. 647, 648 (1963) (inferring fact from allegations of complaint).

1  While the court initially denied defendants' request for an extension of time, plaintiffs never
2  moved for a clerk's entry of default or filed a motion for default judgment.  A defendant is barred from
3  appearing in an action only after the clerk of court has entered default, and if no such action has been
4  taken, a defendant may file documents, including pleadings, even though they are late.  See
5  Schwarzer, Tashima, Wagstaffe, Rutter Group Practice Guide: Federal Civil Procedure Before Trial
6  §§ 6:3, 6:6, 6:42 (The Rutter Group 2007).  More importantly, the provisions of the Federal Rules of
7  Civil Procedure do not set a specific deadline for which motions under Rule 12 must be filed.  See 5C
8  Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §1391, at 519-20 (3d ed.
9  2004) (stating that the plain language of Rule 12 does not require the motion be filed within the time
10 limit for filing an answer, and that "it merely dictates waiver if the defense is not made by motion or
11 included in the responsive pleading, presumably whenever it may happen to be served.").  Thus, courts
12 have found Rule 12(b) motions to dismiss are permissible and timely even when filed after an answer
13 was due and without an extension of time.  See, e.g., Luv N' Care, Ltd. v. Babelio, S.A., 306 F. Supp.
14 2d 468, 471-73 (S.D.N.Y. 2004) (rejecting plaintiff's argument that defendant could not file its Rule
15 12(b) motion because time to answer had lapsed and court had not granted an extension of time); In
16 re Union Nat. Bank & Trust Co. of Souderton, Pa., 287 F. Supp. 431, 433 (D.C. Pa.1968) (holding
17 that a Rule 12(b)(6) motion is not subject to "the time strictures of 12(a)" and can be filed 18 months
18 after service of the pleadings); Koncewicz v. East Liverpool City Hospital, 31 F. Supp. 122 (D.C. Pa.
19 1940) (holding that defendant could file Rule 12 motion despite missing deadline to file an answer
20 where no default judgment had been entered); cf. Marbly v. Home Properties of New York, 183 F.
21 Supp. 2d 950, 954 (E.D. Mich. 2002) (rejecting plaintiff's argument that court must rule in its favor
22 because defendant did not timely file its brief).  In sum, the court finds that it can reach the substantive
23 merits of defendants' motions and need not summarily deny them as suggested by plaintiffs.

24  The second preliminary issue is whether the corporate plaintiffs – Mat-Van and 1DB – have
25 the capacity to bring a lawsuit under California law.  Initially, defendants argued: 1) Mat-Van cannot
26 maintain this action because its corporate charter was suspended; and 2) 1DB is unable to sue because
27 it is not incorporated or qualified under California law.  (Memo. ISO Motion at 3-4.)  Plaintiffs
28 respond that: 1) Mat-Van is currently in good standing with the California Department of

Corporations; and 2) 1DB is not a California corporation, as mistakenly noted in the complaint, but a Belizean entity in good standing. (Opp. at 4-5.) In its reply, defendants concede Mat-Van now has the capacity to sue having revived its corporate status but maintain 1DB does not have the capacity to sue because it does not have a "certificate of qualification." (Reply at 3.) Plaintiffs respond that 1DB can maintain this lawsuit because it is not required to hold a "certificate of qualification." (Sur-Reply at 1-3.)

Fed. R. Civ. P. 17(b) states in relevant part, "[t]he capacity of a corporation to sue . . . shall be determined by the law under which it was organized," and "[i]n all other cases capacity to sue . . . shall be determined by the law of the state in which the district court is held . . . ." Fed. R. Civ. P. 17(b). Here, the parties do not dispute that California corporations law controls whether 1DB has the capacity to sue. California Corp. Code §2105 prohibits foreign corporations from transacting "intrastate business" without having first obtained a "certificate of qualification" from the Secretary of State.[2] Cal. Corp.Code § 2105. California Corp. Code §2203(c) restricts a foreign corporation conducting "intrastate business" from bringing a lawsuit in California without a "certificate of qualification."[3] See, e.g, Neogard Corp. v. Malott & Petterson-Grundy, 106 Cal. App. 3d 213, 220 (1980). A defendant who challenges a corporate plaintiff's capacity to sue under Cal. Corp. Code §§2105, 2203(c) bears the burden of proving 1) the action arose out of plaintiff's transaction of intrastate business; and 2) the action was commenced prior to plaintiff qualifying to transact intrastate business.[4] United Med. Mgmt. Ltd. v. Gatto, 49 Cal. App. 4th 1732, 1740 (1996); Thorner v. Selective Cam Transmission Co., 180 Cal. App. 2d 89, 90 (1960).

---

[2] Cal. Corp. Code §2105 states, in relevant part, "[a] foreign corporation shall not transact intrastate business without having first obtained from the Secretary of State a certificate of qualification." Cal. Corp. Code §2105 (West 2007). Section 2105 further sets forth the requirements for a foreign corporation to obtain a "certificate of qualification."

[3] Cal. Corp. Code §2203 states in relevant part,
A foreign corporation . . . which transacts intrastate business without complying with Section 2105 shall not maintain any action or proceeding upon any intrastate business so transacted in any court of this state, commenced prior to compliance with Section 2105, until it has complied with the provisions thereof and has paid to the Secretary of State a penalty. . . . Cal. Corp. Code §2203.

[4] If a defendant meets its burden of proving a plaintiff's inability to sue, the court may dismiss or stay the action pending compliance with § 2203. United Med. Mgmt. Ltd., 49 Cal.App.4th at 1740.

The court agrees with plaintiffs that defendants have not met their burden. Even before addressing the question of whether plaintiffs complied with the requirements of §§ 2105, 2203, the court must determine whether plaintiffs are in fact subject to the provisions in the first place. In other words, defendants must first establish that plaintiffs were obligated to obtain a "certificate of qualification" because they engaged in "intrastate business." See LeBlanc Nutritions, Inc. v. Advanced Nutra LLC, case no. 05-CV-581, 2005 WL 1398538, at *3 (E.D. Cal. June 14, 2005). California's Corporations Code specifically defines "transact[ing] intrastate business" as "entering into repeated and successive transactions of its business in this state, other than interstate or foreign commerce." Cal. Corp. Code §191(c). Defendants have failed to produce any evidence that 1DB entered into "repeated and successive transactions" in California that would trigger the requirements of Cal. Corp. Code §2203.[5] Defendants simply rely on the allegations in plaintiffs' complaint which establish the existence of a lone contract between 1DB and defendants to auction plaintiffs' islands in New York. This is insufficient to establish that 1DB engaged in "intrastate business." See United States Cap & Closure, Inc. v. Superior Court for Los Angeles County, 265 Cal. App. 2d 408, 411 (1968) (stating that the fact that the plaintiff and the defendant entered into one contract in California did not "constitute repeated and successive transactions"); LeBlanc Nutritions, Inc., 2005 WL 1398538, at *3 (holding that the defendant failed to establish the plaintiff was required to comply with §2203 where defendant relied on the complaint, which showed the existence of two transactions). Therefore, the court denies defendants' request to dismiss 1DB for non-compliance with Cal. Corp. Code §2203.

In their Rule 12(b)(6) motion, defendants originally argued that defendants' first cause of action for fraud must be dismissed with prejudice because a contract cannot serve as basis for a tort claim as a matter of law without an independent duty. However, as plaintiffs note in their opposition and defendants concede in their reply, promissory fraud is a viable cause of action under California

---

[5] Plaintiffs' reliance on Koninklijke Luchtvaart Maatschappij v. Superior Court in and for Los Angeles County, 107 Cal.App.2d 495, 500 (1951) is misplaced. In its discussion of what constitutes "doing business" in the context of personal jurisdiction, the court in Koninklijke did not address the specific statutory definition of "transacting intrastate business," which is the relevant analysis for purposes of determining whether compliance with Cal. Corp. §§ 2105, 2203 is necessary.

1  law where a defendant fraudulently induces the plaintiff to enter into a contract.[6]  See Lazar v.
2  Superior Court, 12 Cal.4th 631, 638 (1996); Hsu v. Oz Optics Ltd., 211 F.R.D 615, 620 (N.D. Cal.
3  2002) (stating that a claim for promissory fraud will lie where a defendant enters into a contract
4  without intending to be bound by the terms of the agreement).  Nonetheless, defendants argue the first
5  cause of action must be dismissed because plaintiffs have failed to allege fraud with the requisite
6  specificity.  Defendants argue plaintiffs have not pled sufficient facts from which it can be inferred
7  the defendants did not intend to perform the contract.

8  In diversity cases such as the instant case, the substantive elements of fraud are determined by
9  state law but the complaint must conform with the requirements of the Federal Rules of Civil
10 Procedure.  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).  Generally under
11 the Federal Rules, factual allegations need only meet the minimal pleading requirements of Fed. R.
12 Civ. P. 8(a) except in particular cases such as a fraud claim, where allegations must meet the
13 heightened pleading requirements of Fed. R. Civ. P. 9(b).  Rubke v. Capitol Bancorp Ltd., 460 F.
14 Supp. 2d 1124, 1134 (N.D. Cal. 2006).  Rule 9(b) states "the circumstances constituting fraud or
15 mistake shall be stated with particularity."[7]  Fed. R. Civ. P. 9(b).  Allegations of fraud must be specific
16 enough to give "defendants notice of the particular misconduct which is alleged to constitute the fraud
17 charged so that they can defend against the charge and not just deny that they have done anything
18 wrong."  Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001).  Rule 9(b) "requires pleading
19 facts that by any definition are 'evidentiary': time, place, persons, statements made, explanation of
20 why or how such statements are false or misleading."  In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541,
21 1548 n. 7 (9th Cir. 1994).  Furthermore, Rule 9(b) "require[s] plaintiffs to differentiate their
22 allegations when suing more than one defendant . . . and inform each defendant separately of the

---

[6] The elements of fraud under California law are: (1) a knowingly false misrepresentation by the defendant, (2) made with the intent to deceive or to induce reliance by the plaintiff, (3) justifiable reliance by the plaintiff, and (4) resulting damages.  Lazar, 12 Cal.4th at 638.  Promissory fraud is a subspecies of fraud.  Id.

[7] "A motion to dismiss a . . .claim . . . under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim. . . . Because a dismissal of a complaint or claim grounded in fraud for failure to comply with Rule 9(b) has the same consequence as a dismissal under Rule 12(b)(6), dismissals under the two rules are treated in the same manner."  Vess, 317 F.3d at 1107-08.

allegations surrounding his alleged participation in the fraud."[8] <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 764-65 (9th Cir. 2007).

Having reviewed the allegations in plaintiffs' first cause of action, the court finds the requirements of Rule 9(b) have not been met. First, plaintiffs have not alleged the identity of the individuals who made the purportedly fraudulent representations. Corporations speak through agents and, therefore plaintiffs must identify the agent who made the fraudulent statement, their authority to speak, and to whom the agent spoke. General allegations that a corporation committed fraud, such as here, are insufficient under Rule 9(b)'s pleading requirement. <u>See, e.g.</u>, <u>Tarmann v. State Farm Mut. Auto. Ins. Co.</u>, 2 Cal. Rptr. 2d 861, 863 (1991); <u>Arena v. Wal-Mart Stores, Inc.</u>, 221 F.R.D. 569, 572 (D. Kan. 2004); <u>Kriendler v. Chem. Waste Mgmt., Inc.</u>, 877 F.Supp. 1140, 1155 (N.D. Ill.1995). Plaintiffs' allegations do not place defendants on notice as to who in their organizations may have made the statements or to whom the statements were made. Moreover, the complaint lumps the two defendants together without alleging the role or participation of each defendant in the fraud as required under the heightened pleading requirements for fraud. <u>See Moore v. Kayport Package Express, Inc.</u>, 885 F.2d 531, 541 (9th Cir. 1989); <u>Swartz</u>, 476 F.3d at 764-65.

Second, plaintiffs' factual allegations fail to demonstrate that defendants did not have an intention to keep promises at the time they was made. "Although intent can be averred generally under Rule 9(b), a plaintiff must point to facts which show that defendant harbored an intention not to be bound by terms of the contract at formation." <u>Hsu</u>, 211 F.R.D. at 620; <u>Richardson v. Reliance Nat'l Indemnity Co.</u>, No. C 99-2952, 2000 WL 284211, at *4 (N.D. Cal. Mar. 9, 2000). In the instant case, the only allegations in the complaint that could demonstrate defendants' fraudulent intent are claims that defendant ultimately did not perform the material terms of the contract. Plaintiffs' reliance on nonperformance as circumstantial evidence of defendants' fraudulent intent at the time of contract formation is misplaced. <u>See Smith v. Allstate Insurance Co.</u>, 160 F. Supp. 2d 1150, 1153-54 (S.D. Cal. 2001) (dismissing promissory fraud claim because plaintiff only alleged that defendant breached contract as evidence of fraudulent intent was improper). For promissory fraud claims, plaintiffs

---

[8] In a lawsuit involving multiple defendants, "a plaintiff must, at a minimum, identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." <u>Swartz</u>, 476 F.3d at 765.

1 cannot rest on allegations that defendants breached the contract but must plead the existence of other
2 facts that create a reasonable inference of deceptive intent at the time the statements were originally
3 made.[9] See Tenzer v. Superscope, Inc., 39 Cal.3d 18, 30 (1985) (noting that "something more than
4 nonperformance is required to prove the defendant's intent not to perform his promise"); Sunnyside
5 Development Co., LLC v. Opsys Limited, case no. C 05-553, 2005 WL 1876106, at *5-6 (N.D. Cal.
6 Aug. 8, 2005) ("[T]he mere fact that a party breaches a promise to perform a condition of contract is
7 as a matter of law insufficient to give rise to an inference that the breaching party acted with
8 fraudulent intent at the time that the promise was made."); Gordon v. La-Z-Boy, Inc., case no. 06-CV-
9 2353, 2007 WL 1101456, at *6 (E.D. Cal. May 22, 2006); cf. National Westminster Bank, USA v.
10 Ross, 130 B.R. 656, 664 (S.D.N.Y. 1991) ("The law is well settled . . . that a party may not establish
11 fraudulent intent solely from the non-performance of the future event."). Under plaintiffs' logic, every
12 breach of contract could "support a claim of fraud so long as the plaintiff adds to his complaint a
13 general allegation that the defendant never intended to keep her promise." Richardson, 2000 WL
14 284211, at *5; cf. International Star Registry of Illinois v. ABC Radio Network, Inc., 451 F. Supp. 2d
15 982, 988 (N.D. Ill. 2006) (stating that Rule 9(b)'s heightened pleading requirements serve to deter
16 plaintiff's with a breach of contract claim from "open[ing] the door to tort damages by alleging that
17 the promises broken were never intended to be performed").  Contrary to plaintiffs' argument,
18 conclusory statements that defendants never intended to perform are insufficient without further
19 factual allegations that establish contemporaneous falsity. See Hsu, 211 F.R.D. at 620 (holding that
20 general allegation that defendant had no intention to perform the contract is inadequate without
21 additional facts).

22 **2.     Defendant's Motion to Strike Plaintiff's Claim For Punitive Damages**

23 Pursuant to Rule 12(f), the court may strike any "redundant, immaterial, impertinent, or
24 scandalous matter." Fed. R. Civ. P. 12(f).  "Motions to strike are generally not granted unless it is
25 clear that the matter to be stricken could have no possible bearing on the subject matter of the

---

[9] In GlenFed, 42 F.3d at 1548, the Ninth Circuit noted that fraudulent intent can be "most directly" demonstrated by "point to inconsistent contemporaneous statements or information." Plaintiffs may also on a "later statement by the defendant along the lines of 'I knew it all along' might suffice" to establish fraudulent intent. Id. at 1549 n.9.

litigation."[10] LeDuc v. Kentucky Central Life Ins. Co., 814 F. Supp. 820, 830 (N.D. Cal. 1992). Motions to strike are commonly used to "strike a prayer for relief where the damages sought are not recoverable as a matter of law." Gay-Straight Alliance Network v. Visalia Unified School Dist., 262 F. Supp. 2d 1088, 1110 (E.D. Cal. 2001). While punitive damages are not available in breach of contract actions, punitive damages may be warranted in a case where a defendant fraudulently induced a plaintiff to enter into a contract. See Walker v. Signal Companies, Inc., 84 Cal. App. 3d 982, 996 (1978); Reynolds v. Allstate Life Ins. Co., 2006 U.S. Dist. LEXIS 14548, at *16 (E.D. Cal. 2006); Cal. Civ.Code § 3294(a) ("... where it is proven by clear and convincing evidence that the defendant has been guilty of ... fraud ... the plaintiff ... may recover damages for the sake of example and by way of punishing the defendant.").

In the instant case, the court has determined that the allegations in plaintiff's promissory fraud claim, which serve as the basis for plaintiff's request for punitive damages, are insufficient and plaintiffs' first cause of action must be dismissed. As such, defendants' motion to strike is denied as moot.[11]

**CONCLUSION**

For the foregoing reasons, the court **GRANTS** defendants' motion to dismiss and **DENIES** defendants' motion to strike as moot. The court **GRANTS** plaintiffs leave to amend the complaint. Plaintiffs may file an amended complaint addressing the deficiencies set forth above, no later than 14 days from the date this order is filed.

**IT IS SO ORDERED.**

DATED: July 27, 2007

*Irma E. Gonzalez*
**HON. IRMA E. GONZALEZ, Chief Judge**
United States District Court
Southern District of California

---

[10] Motions to strike are regarded with disfavor because of the limited importance of pleadings in federal practice. Colaprico v. Sun Microsystems Inc., 758 F. Supp. 1335, 1339 (N.D. Cal.1991).

[11] The court notes that the crux of defendants' argument is that plaintiffs have failed to meet the pleading requirements for punitive damages. The proper procedural vehicle to challenge the sufficiency of the allegations supporting punitive damages is a Rule 12(b)(6) motion and not a Rule 12(f) motion to strike. Parker v. Fid. Sec. Life Ins. Co., 2006 U.S. Dist. LEXIS 56724, at *17 (E.D. Cal. 2006).