# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAT-VAN, INC.; LUMAN N. NEVELS, JR.; 1DB CORPORATE RETREAT, LTD., <br><br> Plaintiffs, <br><br> vs. <br><br> SHELDON GOOD & COMPANY AUCTIONS, LLC; and DOES 1 to 30, <br><br> Defendants. | CASE NO. 07-CV-912 – IEG (BLM) <br><br> **ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT** <br><br> **[Doc. No. 50.]** |

Plaintiff's Mat-Van, Inc., Luman N. Nevels, Jr., and 1DB Corporate Retreat, Ltd. have moved the Court for leave to file a Third Amended Complaint. The Court grants the motion, subject to the limitations set out herein.

## BACKGROUND

1. <u>Factual Background</u>

Defendant Sheldon Good & Company Auctions, LLC ("SGC") is an auction company incorporated in Delaware with its principal places of business in Illinois. Mat-Van, Inc. ("Mat-Van"), Luman N. Nevels Jr. ("Nevels"), and 1DB Corporate Retreat, Ltd. ("1DB") (collectively "plaintiffs") each own island properties, which they wished to sell. This action arises out of contracts between SGC and each plaintiff in which SGC agreed to auction plaintiffs' three resort islands. [Second Amended Complaint ("SAC"), ¶¶ 6, 8, 11.]

1  According to the SAC, SGC's Senior Vice Presidents, David Latvaaho and Douglas Johnson, approached plaintiffs with a plan to set up a worldwide auction where plaintiffs could sell their three islands along with other sellers. (Id. ¶ 9.) Plaintiffs allege SGC made the following representations to plaintiffs: (1) each island owner would contribute $100,000 per island to form a marketing fund of at least $500,000; (2) public interest existed in buying at this kind of auction; (3) a large number of island owners were interested in selling at the auction; (4) SGC would limit the number of islands sold at the auction to under ten, but at least five; (5) SGC had rejected some islands as unsuitable for the auction; and (6) each island would be given equal marketing and advertising exposure in exchange for the owner's $100,000 contribution. (Id. ¶ 9.)[1]

After signing written contracts, plaintiffs each gave SGC $100,000 for marketing and auction purposes. (Id. ¶¶ 11-13.) The auction did not turn out to be the success plaintiffs hoped for, as none of the island properties were purchased. (Id. ¶ 15.) Plaintiffs discovered that, contrary to SGC's alleged representations, another seller, George Story, did not contribute $100,000 per island to the marketing funds, but only contributed $100,000 to list his two islands.[2] (Id. ¶ 9.) Based on discovery plaintiffs conducted in October, 2008, plaintiffs seek to add additional factual details about SGC's conduct to a Third Amended Complaint. ("TAC") (Motion, Ex. A.)   These additional details are further discussed *infra*.

2.  Procedural Background

On April 5, 2007, plaintiffs filed a complaint in the Superior Court of California for the County of San Diego, alleging fraud and breach of contract. (Doc. No. 1, Notice of Removal, Exhibit A, 3-4.) On May 21, 2007, defendant removed the case to this Court. On July 27, 2007, the Court granted defendant's motion to dismiss plaintiffs' fraud cause of action and motion to strike plaintiffs' claim for punitive damages. (Doc. No. 15.) The Court granted plaintiffs' leave to amend,และ plaintiffs filed a first amended complaint on August 10, 2007. (Doc. No. 16.) The Court granted defendant's motion

---

[1] The SAC makes additional allegations of certain representations SGC made to plaintiffs, but the Court dismissed those allegations in its February 6, 2008 order. As plaintiffs do not reassert those allegations in the proposed Third Amended Complaint ("TAC"), the Court does not address them in this Order.

[2] The proposed TAC alleges that Story only contributed $25,000 per island. (TAC at 12.)

to dismiss the first amended complaint in its entirety on October 16, 2007, again granting plaintiffs leave to amend. (Doc. No. 24.)

On October 30, 2007, plaintiffs filed a second amended complaint (hereinafter "SAC"). (Doc. No. 25.) On November 9, 2007, defendant moved to dismiss the SAC and to strike the request for punitive damages. (Doc. No. 26.) On February 6, 2008, the Court partially granted the motion, dismissing portions of plaintiffs' fraud and breach of contract claims with prejudice and without leave to amend. ("Dismissal Order") (Doc. No. 33.)[3] The Court also dismissed plaintiffs' breach of fiduciary duty claim without prejudice, dismissed defendant Sheldon Good & Company Auctions from the case, and denied defendant's motion to strike plaintiffs' request for punitive damages. On April 22, 2008, the magistrate judge issued a scheduling order ("Scheduling Order") setting the deadline to amend the pleadings for June 13, 2008. (Doc. No. 41.) Plaintiffs moved to file a TAC on November 5, 2008. (Doc. No. 50.) Defendant filed an opposition on November 17, 2008, (Doc. No. 51,) and plaintiffs filed a Reply brief on December 5, 2008. (Doc. No. 52.) The Court heard oral argument on plaintiffs' motion on Monday, December 15, 2008.

## DISCUSSION

1.  Legal Standard

Under Fed. R. Civ. P. 15 (2008), "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Leave to amend is granted with "extreme liberality." Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990). "There are several accepted reasons why leave to amend should not be granted, including the presence of bad faith on the part of the [party seeking to amend], undue delay, prejudice to the [party opposing amendment], futility of amendment, and that the party has previously amended the relevant pleading." Advanced Cardiovascular Sys., Inc. v.

---

[3] In the portions of the Dismissal Order relevant to the present motion, the Court found the parol evidence rule applied to plaintiffs' fraud claim, and that the rule barred plaintiffs' reliance on any promises not embodied in the written agreement unless the rule's "fraud exception" applied. (Id. at 4-5.) The Court found the fraud exception did not apply to allegations of "promissory fraud" (i.e. promises made without the intention to perform), and only allowed evidence of misrepresentations of existing material facts which fraudulently induced plaintiffs to enter the contracts with SGC. Id. at 6. The Court accordingly found plaintiffs stated an element of a deceit claim where they asserted SGC misrepresented then-existing facts, Id., but did not state a claim insofar as they alleged SGC misrepresented future facts or its future actions. Id. at 6-7.

1  SciMed Life Sys., Inc., 989 F. Supp. 1237, 1241 (N.D. Cal. 1997) (citing DCD Programs, Ltd. v.
2  Leighton, 833 F.2d 183, 186 (9th Cir. 1987)).

3  When a party seeks to amend a pleading beyond the deadline the court sets in its pretrial
4  scheduling order, Federal Rule of Civil Procedure 16 applies to the proposed amendment. Johnson
5  v. Mammoth Recreations, 975 F.2d 604, 608 (9th Cir. Cal. 1992).  Fed. R. Civ. P. 16 provides "[a
6  pretrial] scheduling order must limit the time to join other parties, amend the pleadings, complete
7  discovery, and file motions," and "may be modified only for good cause and with the judge's consent."
8  Fed. R. Civ. P. 16(b) (2008).  Under Rule 16's "good cause" standard, the district court may modify
9  the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the
10 extension.'" Johnson, 975 F.2d at 609 (citation omitted).  If the amending party shows good cause,
11 the party must then demonstrate the amendment is proper under Rule 15.  Id. at 608 (citing the rule
12 set out in Forstmann v. Culp, 114 F.R.D. 83, 85 (M.D.N.C. 1987)).

13 2.     Plaintiffs Have Shown Good Cause to Amend Under Fed. R. Civ. P. 16

14 Plaintiffs seek to file a TAC that adds a cause of action for breach of fiduciary duty and
15 amends the fraud cause of action.  Plaintiffs seek this amendment past the Scheduling Order deadline.
16 Plaintiffs must accordingly show good cause for the Court to modify that deadline. Johnson, 975 F.2d
17 604 at 608. Under Rule 16's "good cause" standard, the district court may modify the pretrial schedule
18 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" Johnson, 975
19 F.2d at 609 (citation omitted).

20 In this case, plaintiffs did not have the information they needed to amend the complaint until
21 after the deadline for amendments had passed, and once they had the necessary information, they
22 promptly filed for leave to amend their complaint.  Plaintiffs' counsel declares defendant made its
23 initial disclosure under Fed. R. Civ. P. 26 on April 16, 2008 and produced 1200 documents
24 approximately two weeks later.  (Decl. of Harris I. Steinberg ISO Reply at 1.)  Those 1200 documents
25 allegedly contained no basis for plaintiffs to amend the SAC.  Id.  At the time defendant made the
26 initial disclosure, defense counsel allegedly indicated there might be more documents to produce.
27 Defense counsel later confirmed SGC would produce more documents, but was having difficulty
28 retrieving them because of a computer issue.  Id.  By September 5, 2008 defendant handed over the

- 4 -                                                              07cv912

last 4,000 of over 12,000 total documents produced. (Sep. 5, 2008 letter from defense counsel to plaintiffs' counsel, Steinberg Decl. ISO Reply, Ex. A). Plaintiffs contend they could not take critical depositions of SGC executives until they had reviewed the documents. (Reply at 3.) Plaintiffs promptly took the additional depositions on October 24 and 26, 2008, and filed the instant motion on November 5, 2008. This sequence of events indicates defendant's delay in producing discovery made it impossible for plaintiffs to review the documents and depose any important witnesses before the Scheduling Order deadline. Plaintiffs have accordingly shown good cause to modify the pretrial schedule for Rule 16 purposes.

3.   Plaintiffs' Compliance With Fed. R. Civ. P. 15

Having shown good cause to amend the complaint past the deadline, plaintiffs must also demonstrate the amendments are proper under Fed. R. Civ. P. 15 (2008). Plaintiffs' proposed TAC adds a cause of action for breach of fiduciary duty and amends the fraud cause of action. In its opposition brief, defendant argues the amendments are futile. They are being brought after undue delay and the amendments will prejudice defendant's case. Under Fed. R. Civ. P. 15, leave to amend a pleading is granted with "extreme liberality." Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990). There are several accepted reasons why leave to amend should not be granted, however, including the presence of bad faith on the part of the [party seeking to amend], undue delay, prejudice to the [party opposing amendment], futility of amendment, and that the party has previously amended the relevant pleading." Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc., 989 F. Supp. 1237, 1241 (N.D. Cal. 1997) (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987) ("Leighton")). After considering the parties' arguments, and pursuant to the discussion provided *infra*, the Court grants plaintiffs' motion for leave to file a TAC to the extent the requested amendments are not futile.[4]

   *A.   Plaintiffs' Proposed Breach of Fiduciary Duty Claim*

Plaintiffs base their proposed breach of fiduciary duty claim on facts they discovered in the October 24 and 26, 2008 depositions of Steven Good (Chairman of SGC) and David Latvaaho (Senior

---

[4] The Court finds that none of the other Leighton exceptions to the liberal Rule 15 standard bar plaintiff's requested amendments under the present circumstances.

1  Vice President of SGC), whom plaintiffs allege owed a fiduciary duty to them as real estate agents.
2  Plaintiffs' first basis for the claim is that Good instructed Douglas Johnson (Senior Vice President of
3  SGC) and Latvaaho to advise plaintiffs they should **not** proceed with the contracted "open out-cry
4  auction."  Good allegedly told Johnson and Latvaaho they should give plaintiffs the option to
5  withdraw from the auction and receive a refund of their $100,000 or switch to a "sealed bid
6  convertible auction."  Plaintiffs allege Johnson and Latvaaho did not advise them of this option.
7  (Motion at 3.)

8  Second, plaintiffs allege Latvaaho testified that Good instructed him to tell plaintiffs about
9  SGC's deal with George Story (Story had to contribute only $25,000 per island), and to give plaintiffs
10 the option of cancelling the contract with a full refund if plaintiffs disagreed with the terms of the
11 Story deal. (Id. at 4.)  Plaintiffs allege Latvaaho did not tell them of this option.

12 Finally, plaintiffs contend SGC breached its fiduciary duty to them by withholding
13 approximately $47,060 in unspent marketing funds.  Plaintiffs discovered this withholding through
14 an accounting SGC produced in September 2008.  In their new cause of action, plaintiffs would like
15 to recover the withheld money as well as the money which SGC's officers were supposed to offer back
16 to plaintiffs if they did not proceed with the contract.  (Id.)

17 The addition of a breach of fiduciary duty claim would not be futile.  The Dismissal Order did
18 not find the SAC's breach of fiduciary duty claim was barred as a matter of law.  Now, after further
19 discovery, plaintiffs have sufficiently alleged a breach of fiduciary duty claim.

20     *B.*    *Fraud Claim*

21 Plaintiffs also seek to add certain "missing factual representations" to the fraud cause of action
22 in the SAC. (Motion at 1.)  Plaintiffs refer to Johnson's October 2008 deposition testimony that he
23 intended at all times to "negotiate" with any island owner for a marketing fee of less than $100,000.
24 Plaintiffs also allege that Johnson and Latvaaho in April 2006 (before signing the contract with
25 plaintiffs) agreed to sign up another island owner, Victor Teva,[5] at a cost of $50,000, and with the
26 promise that Mr. Teva would get equal exposure to other island owners who were paying the full
27 $100,000 marketing cost. (Motion at 2 and 7.)  SGC allegedly also entered into a $25,000 per island

---

[5] The TAC refers to Victor Teva as "Teva Thomas."  See e.g., TAC at 4.

1  deal with George Story after signing the $100,000 deal with plaintiffs. (Motion at 3.) Plaintiffs argue
2  these additional facts support a claim of deceit, and are allowed under the fraud exception to the parol
3  evidence rule because they show the representations SGC made that all owners would contribute
4  $100,000 were not true when SGC made them. (Reply at 6.)
5        Under the analysis the Court set out in the Dismissal Order, plaintiffs stated a claim of deceit
6  to the extent they alleged misrepresentations of *then-existing facts*, and those allegations were not
7  barred by the parol evidence rule. (Dismissal Order at 6.)  The Court dismissed plaintiffs' claim to
8  the extent it alleged promissory fraud (i.e. promises made without the intention to perform), because
9  allegations of SGC's misrepresentations of *future acts* were barred by the parol evidence rule. (Id. at
10 7, 12-13.)  The proposed TAC alleges several misrepresentations by SGC.  These allegations include
11 misrepresentations of existing material fact that are not precluded by the parol evidence rule, but also
12 include promissory fraud allegations regarding SGC's alleged misrepresentations of future acts. The
13 promissory fraud allegations have already been dismissed by the Court. Therefore, they are futile and
14 not allowed under Rule 15.  Klamath-Lake Pharmaceutical Ass'n v. Klamath Medical Serv. Bureau,
15 701 F.2d 1276, 1293 (9th Cir. 1983) ("futile amendments [to a complaint] should not be permitted.")
16       The Court accordingly **GRANTS** plaintiffs' motion to amend the fraud claim, but **ORDERS**
17 the following language be **REMOVED** from the proposed TAC, as it alleges promissory fraud:  (1)
18 allegations that defendant represented the auction would include no fewer than five islands or more
19 than ten islands (TAC ¶¶ 9(A), 9(C), and 9(F)); (2) allegations that "[d]efendant never intended to
20 require each island to contribute $100,000 to the marketing pool" (Id. ¶ 9(D)); and (3) the allegation
21 that defendant represented the advertising fund would include a minimum of $500,000. (Id. ¶ 9 (F)).

22                                          **CONCLUSION**

23       For the foregoing reasons, plaintiffs' motion for leave to file a Third Amended Complaint
24 is **GRANTED**, subject to the restrictions noted herein.  Plaintiffs may assert a breach of fiduciary
25 duty claim, and may amend their fraud claim so long as the specified language regarding false
26 promises in paragraphs 9 (A), (C), (D), and (F) is eliminated.  The Court further **ORDERS** the
27 proposed TAC's breach of contract cause of action be amended to comply with the Court's
28 February 8, 2008 Dismissal Order.  The Court also **ORDERS** that the TAC's caption reflect the

dismissal of defendant Sheldon Good and Company Auctions.

The TAC shall be filed no later than ten days from the date of this Order. The Court will consider no further amendments to the complaint.

**IT IS SO ORDERED.**

**DATED: January 5, 2009**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**